UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOEL M. REINEBOLD, <br><br> Plaintiff, <br><br> v. <br><br> INDIANA UNIVERSITY AT SOUTH BEND, STEVE BRUCE, and TOM NORRIS, <br><br> Defendants. | CAUSE NO. 3:18-CV-525 DRL-MGG |

OPINION & ORDER

Indiana University South Bend declined to hire Joel Reinebold as head baseball coach. He sued IUSB, Athletic Director Steve Bruce, and Assistant Athletic Director Tom Norris under the Age Discrimination in Employment Act and 42 U.S.C. § 1983. The court dismissed all claims (with his concession) except a § 1983 individual capacity claim against Messrs. Bruce and Norris. The athletic directors now request summary judgment on this last claim. Mr. Reinebold cannot show that they treated him differently because of his age, so the court grants their summary judgment motion.

BACKGROUND

In 2017, IUSB began searching for a full-time baseball coach. IUSB formed a hiring committee, led by Mr. Bruce and including Mr. Norris and six other members of the athletic department. After receiving 94 applications and reviewing credentials, the committee selected eleven candidates for phone interviews, including Mr. Reinebold at 56 years old. He had over twenty years coaching experience and impressive letters of recommendation. He had won two high school state championships as an assistant coach at Penn High School.

By all accounts on this record, the phone interview went poorly. Four committee members who interviewed Mr. Reinebold echoed that his responses were unimpressive, with one stressing that the phone interview was one of the worst interviews he had observed. The hiring committee met to

discuss the results of all eleven phone interviews and unanimously agreed that Mr. Reinebold should not be invited to campus for an in-person interview. On this record, the subject of his age never came up in the committee's discussion.

The committee instead invited five other candidates to campus for in-person interviews. The committee unanimously recommended Doug Buysse for the job. A friend of Mr. Norris, Mr. Buysse was 31 years old and had only a few years coaching experience. Mr. Bruce and the IUSB human resource department approved this selection. Mr. Reinebold says he wasn't hired because of his age.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

42 U.S.C. § 1983 provides a civil remedy for constitutional violations—here, alleged age discrimination under the equal protection clause of the Fourteenth Amendment. Such a claim isn't precluded by the ADEA, *see Levin v. Madigan*, 692 F.3d 607, 617-18 (7th Cir. 2012), and no one disputes that the two athletic directors here were acting under color of law when they made their decisions for this state university's hiring committee, *see Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).

The Fourteenth Amendment prohibits the state from discriminating against similarly situated individuals based solely on differences that prove irrelevant to a legitimate governmental objective. *See Hayes v. Missouri*, 120 U.S. 68, 71-72 (1887); *Carson v. Lake Cty.*, 865 F.3d 526, 537 (7th Cir. 2017). The equal protection clause provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV § 1. This clause subjects age-based distinctions to rational basis review—the most deferential form of judicial scrutiny. *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991); *Carson*, 865 F.3d at 537. To prevail here, Mr. Reinebold must prove that Mr. Bruce and Mr. Norris (1) intentionally treated him differently from others similarly situated, (2) intentionally treated him differently because of his age, and (3) the difference in treatment was not rationally related to a legitimate state interest.[1] *Smith v. City of Chi.*, 457 F.3d 643, 650-51 (7th Cir. 2006).

Mr. Reinebold misses on each point, though the university athletic directors forcefully argue only his failure on the first two rudiments. First, no reasonable juror could conclude that Messrs. Bruce and Norris intentionally treated Mr. Reinebold differently from others similarly situated outside of his age group. The equal protection clause constitutionally directs that "all persons similarly situated should be treated alike." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050

---

[1] To the extent that Mr. Reinebold invites the court to import a different analysis, namely the *McDonnell Douglas* burden-shifting framework used under other federal laws, the court declines in favor of this well-established constitutional standard. *See Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 951 (7th Cir. 2002); *see, e.g., Smith*, 457 F.3d at 650-51.

(7th Cir. 2017). Similarly situated individuals "need not be identical in every conceivable way," but "must be directly comparable to the plaintiff in all material respects." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (omitting internal quotations). This standard calls for a "flexible, common-sense" consideration of all relevant factors. *Id.*

In phase one of the hiring process, despite every effort by Mr. Reinebold to distinguish rather than draw into comparison his situation with that of Doug Buysse[2], the university defendants treated these two men the same. Both men applied for the same job. Both men were considered by the hiring committee as qualified for the job. Both men were granted phone interviews. Both were elevated to discussion before the hiring committee post-interview. This treatment is the same, not different.

In phase two of the hiring process, the hiring committee distinguished the candidates based on their performances in the interview. On this record, there was nothing wrong or discriminatory in doing so. *See Formella v. Brennan*, 817 F.3d 503, 513 (7th Cir. 2016) (two candidates "not sufficiently similarly situated" when one candidate "was well-prepared and provided appropriate, complete, and correct answers to the interview questions" when the other provided incomplete and unimpressive answers). Even a so-called more credentialed candidate on paper may lose his perceived entitlement to a job by a poor interview performance. *See id.* That alone doesn't suggest illegal discrimination, but often rational and sound hiring practices, even when a prospective employer uses subjective criteria rather than objective educational or professional accomplishments to distinguish candidates. *See Armstrong v. City of Milwaukee*, 204 F. Appx. 559, 562-63 (7th Cir. 2006) (circuit has "squarely rejected similar attacks on employers' use of 'subjective' criteria"). After all, the court serves to prevent unlawful hiring practices, not to act as a "super personnel department" that second-guesses an employer's business judgment. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002).

---

[2] Mr. Reinebold argues to some length that a "side-by-side comparison of the resumes of Joel Reinebold and Doug Buysse is no comparison at all" (ECF 45 at 6).

4

In phase two, Mr. Reinebold thus hasn't demonstrated that he and Mr. Buysse were similarly situated. Mr. Reinebold admits he has no idea the factors the hiring committee considered in making its decision distinguishing these two (and other) candidates, so he cannot on this record draw into genuine dispute its decisionmaking process. No matter his experience or credentials on paper, Mr. Reinebold was in performance unimpressive, with one hiring committee member calling it the worst interview in his history of interviewing candidates. *See Formella*, 817 F.3d at 513. In contrast, Mr. Buysse's phone interview was impressive because he had extensively researched the IUSB baseball program and demonstrated the quality of leadership and fit that the hiring committee considered important to incite passion in the university's baseball team. In addition, everyone seems to recognize that Mr. Buysse had a personal friend on the hiring committee (Mr. Norris). Even Mr. Reinebold concedes that "clearly" Mr. Buysse's friendship with Mr. Norris "played a role in his getting the job." Then fundamentally, these two men were not similarly situated.

Second, no reasonable juror could conclude that Messrs. Bruce and Norris intentionally treated Mr. Reinebold differently because of his age. For his case, Mr. Reinebold starts with a comparison of credentials. He says he was objectively more qualified than Mr. Buysse, so it must have been his age that drove the university's decision. *See, e.g.*, ECF 43-11 at 22 ("I've been coaching longer than [Mr. Buysse] has been alive."). Despite Mr. Reinebold's point that good coaches ought to have an objectively verifiable record of success as measured by wins, championships, broken records, dollars raised via fundraising, and other statistics, the record remains undisputed that this hiring committee was looking for other qualities. In the job posting, the hiring committee sought a coach who would be a successful recruiter, prioritize student success off the field, and follow university policy. Indeed, Mr. Reinebold was invited to a phone interview, not because of his win-loss record, but because of his strong community ties, impressive letters of recommendation, and recruitment

5

potential. The phone interview questions, asked of all candidates, built on these criteria and made no mention of just winning baseball games.

The same is true of the on-campus interview questions, which asked about coaching priorities, team culture, and collaboration with colleagues across campus. Although Mr. Reinebold may disagree about what a college baseball program's focus should be in looking for a coach, IUSB consistently maintained a broader perspective and prioritized recruiting, student success, and compliance with university policy throughout the decisionmaking process. Perhaps then it should be to no surprise that the fit wasn't right. The university's use of subjective criteria in evaluating job interview performance was permissible. *Blise v. Antaramian*, 409 F.3d 861, 868 (7th Cir. 2005) ("court has also never held that a job interview must be scored according to some sort of objective criteria"); *Millbrook*, 280 F.3d at 1176 (quoting *Denney v. City of Albany*, 247 F.3d 1172, 1186 (11th Cir. 2001)) ("inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation"). Mr. Reinebold wasn't hired because his interview demonstrated that he didn't possess the desired characteristics, irrespective of age. A reasonable jury couldn't conclude otherwise on this record.

Mr. Reinebold contends that the hiring committee considered his age at the phone interview stage, pointing to one committee member's note that Mr. Reinebold was "looking for a retirement job." The committee had asked candidates about their career goals, both short-term and long-term, and Mr. Reinebold answered that he planned to finish his coaching career in his next position, either at Clay High School (where he was then employed) or IUSB. Though Mr. Reinebold asserts that any reference to retirement must have necessarily taken his age into account, that isn't a fair inference for the committee or hiring decision here. Nothing in the record indicates that this note about retirement was anything more than a reference to Mr. Reinebold's answer about finishing his career, or that this

6

stray note or that the subject of age was actually discussed among the committee members to raise even an inference of causation. *See Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950-51 (7th Cir. 2002) (quoting *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996)) (plaintiff must show the "decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group"). Indeed, the undisputed evidence in the record indicates that the candidates' ages weren't discussed by the hiring committee.

Mr. Reinebold next asserts that the hiring committee's description of Mr. Buysse as "moldable" presupposes age was a factor in the university's hiring. Mr. Reinebold claims this note came from the phone interview, when it was in fact a note from the hiring committee's final recommendation after the on-campus interviews. Mr. Norris explained that this comment described Mr. Buysse's willingness to comply with university policy. Even giving every reasonable inference to Mr. Reinebold, no reasonable jury could view this comment as saying anything more than Mr. Buysse was "coachable." A reasonable jury could not conclude that it was somehow a cloaked reference to Mr. Reinebold being too old, particularly when he wasn't even being considered for the job at the time the comment was made.

Mr. Reinebold also offers testimony from a barber (C.W.) who discussed the hiring of IUSB's baseball coach with Mr. Norris. Mr. Reinebold argues that Mr. Norris told his barber that he preferred Mr. Buysse for the job because of his youth. In fact, though the barber could recall Mr. Norris describing Mr. Buysse as "young," this was merely a description of the candidate, not a description of the reasons he was hired. According to the barber, Mr. Norris never "broke down any of the candidates as far as pros and cons." He never spoke about his motivations during the hiring process. He never discussed age as a hiring reason. The barber insisted that age wasn't mentioned, though the investigator tried to get him to say it was. According to the barber, Mr. Norris "just came back and told us about the hire and who it was." The barber believed the hire was made because Mr. Norris

7

and Mr. Buysse were friends. Nothing on this record links age to the hiring decision. Indeed, each committee member disavows that age manipulated the university's hiring decision.

CONCLUSION

Construing all facts and reasonable inferences in favor of Joel Reinebold, no reasonable jury could find that IUSB Athletic Director Steve Bruce or Assistant Athletic Director Tom Norris intentionally treated him differently from other similarly situated candidates for baseball coach or did so because of his age. That leaves no genuine triable issues on the sole remaining claim, so the court GRANTS summary judgment for Mr. Bruce and Mr. Norris and DIRECTS the clerk to enter judgment in their favor. This order terminates the case.

SO ORDERED.

December 21, 2020                                    *s/ Damon R. Leichty*
                                                     Judge, United States District Court